UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JASON MATECKI,<br><br>Defendant. | No. 2:15-cr-00177-TLN<br><br>**ORDER** |

This matter is before the Court on Defendant Jason Matecki's ("Defendant") Emergency Motion for Modification of Sentence. (ECF No. 142.) The Government filed an opposition. (ECF No. 144.) Defendant did not file a reply. For the reasons set forth below, the Court DENIES Defendant's motion.

///
///
///
///
///
///
///
///

1

I. **FACTUAL AND PROCEDURAL BACKGROUND**

On April 8, 2016, Defendant pleaded guilty to possession with intent to distribute MDMA in violation of 21 U.S.C. § 841(a)(1). (ECF No. 48.) On October 27, 2017, Defendant was sentenced to a 75-month term of imprisonment and a 36-month term of supervised release. (ECF No. 132.) Defendant was serving his sentence at FCI Taft, but due to its recent closure was transferred to FCI Mendota. Defendant's projected release date is September 10, 2022.

On April 3, 2020, Defendant submitted an inmate request to the warden of Taft, in which Defendant sought transfer to home confinement due to the COVID-19 pandemic. (ECF No. 142-3.) On April 6, 2020, Dale Patrick, the Executive Assistant/Grievance Coordinator at Taft, responded that due to the number of requests and a lack of guidance from the Bureau of Prisons ("BOP"), no individual responses to the requests would be provided. (ECF No. 142-4.) The memorandum also stated that, due to the upcoming closure of Taft and subsequent transfer of inmates, Defendant would need to make his request at his new facility. (*Id.*) On April 17, 2020, Defendant was transferred to FCI Mendota.

On April 30, 2020, Defendant filed the instant motion for release to home confinement. (ECF No. 142.) Defendant argues he is at a greater risk of contracting COVID-19 because he suffers from high blood pressure and has a family history of heart disease. (*Id.* at 1.) In opposition, the Government argues this Court does not have jurisdiction to designate the place of Defendant's imprisonment under 18 U.S.C. § 3621. (ECF No. 144 at 15.) The Government also argues the Court should deny Defendant's motion pursuant to 18 U.S.C. § 3582(c) because Defendant failed to exhaust administrative remedies and failed to demonstrate extraordinary and compelling reasons to warrant his release. (*Id.* at 19–24.)

II. **ANALYSIS**

A. <u>Exhaustion</u>

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824–25 (2010). The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A) sets forth a rare exception to the general rule. However, relief under 18 U.S.C. § 3582(c)(1)(A) is only available

>upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

18 U.S.C. § 3582(c)(1)(A).

In the instant case, the Government argues that Defendant's April 3, 2020 inmate request to the warden of Taft did not satisfy the exhaustion requirement because "Defendant sought release to home confinement and made no mention of permanent reduction of his sentence or § 3582(c)." (ECF No. 144 at 19.) The Government further argues Defendant's request did not contain sufficient information to constitute a properly submitted compassionate release request. (*Id.*) The Government attaches a declaration by Dale Patrick, who asserts that Taft did not construe any of the more than 150 requests for home confinement it received from inmates as requests for compassionate release. (ECF No. 144-1 at 10, ¶ 8.)

The Court notes at the outset that given the urgent, rapidly evolving, and unprecedented nature of the COVID-19 pandemic, it is concerning that Taft did not construe *any* of the 150 requests for home confinement — many of which were presumably filed by unrepresented inmates with limited access to legal help — as motions for compassionate release. It also bears mentioning that Taft's April 6, 2020 memorandum did not indicate that Defendant's request was deficient in any way or that it failed to comply with 28 C.F.R. § 571.61. Rather, Taft's blanket denial merely stated it would not provide individualized responses due to the "influx" of similar requests and lack of guidance from the BOP. (ECF No. 142-4.) The memorandum also directed inmates to file a new request after being transferred from Taft. (*Id.*)

According to 28 C.F.R. § 571.61, a compassionate release request must contain "at minimum" the following information: "(1) the extraordinary or compelling circumstances that the inmate believes warrant consideration"; and "(2) proposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment."

///

3

In the instant case, Defendant's inmate request met the minimum requirements of 28 C.F.R § 571.61. In Defendant's request, he asserted the he believes his age and specific medical conditions place him "at the highest risk" of contracting COVID-19. (ECF No. 142-3 at 2–4.) He also described his re-entry plan, including details about his proposed place of employment and residence. (*Id.* at 3.) Defendant indicated his proposed residence was a short distance from medical care and explained how home confinement would lessen his risk of contracting COVID-19. (*Id.*) Even though Defendant did not specifically mention § 3582(c) in his request, the Government fails to cite authority requiring Defendant to do so. For all these reasons, Defendant's request was sufficient to be construed as one for compassionate release in these unprecedented circumstances.

Therefore, "the receipt of . . . a [compassionate release] request by the warden of the defendant's facility" in this case was April 3, 2020. *See* 18 U.S.C. § 3582(c)(1)(A). Because 30 days have passed since April 3, 2020, Defendant has met the exhaustion requirement.

### B.     Extraordinary and Compelling Reasons

Despite having met the exhaustion requirement, Defendant is eligible for compassionate release only if he can demonstrate there are "extraordinary and compelling reasons" for a sentence reduction and such a reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Defendant has not met his burden.

The Sentencing Commission's relevant policy statement on compassionate release identifies medical conditions that satisfy the "extraordinary and compelling" requirement. U.S.S.G. § 1B1.13, cmt. n. 1(A). More specifically, the "extraordinary and compelling" requirement is met where a defendant is: (i) suffering from a terminal illness; or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.*

Under normal circumstances, the Defendant's medical condition would not satisfy the "extraordinary and compelling" standard. The Court is mindful that people with certain health

conditions, including high blood pressure, can be particularly vulnerable to COVID-19. However, the Court has no way of knowing whether Defendant's condition is serious enough to make him more vulnerable to COVID-19.  The only evidence Defendant provides to verify his high blood pressure and family history of heart disease is a list of his prescriptions prior to going into custody, a re-entry plan from the BOP, and a letter from his mother.  While Defendant's limited BOP medical records — filed under seal by the Government — indicate that Defendant has been diagnosed with essential (primary) hypertension, those medical records are silent as to the extent or severity of Defendant's hypertension.  As it is, there is no indication his hypertension is terminal, nor that it causes serious functional or cognitive impairment such that he is unable to provide self-care while imprisoned.  Further, Defendant's age, almost 49, does not place him in a higher at-risk group.  As of the date of this Order, there are no confirmed cases of COVID-19 at FCI Mendota.

As a whole, Defendant's arguments about COVID-19 are too general and wide-ranging. *See, e.g.*, *Eberhart*, 2020 WL 1450745, *2 ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement[.]").  Defendant's concerns are understandable but do not raise to the level of "extraordinary and compelling" at this time.

In sum, the Court DENIES Defendant's request for compassionate release because he did not meet his burden to show there are "extraordinary and compelling reasons" for his release.[1]

### III.   CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Emergency Motion for Modification of Sentence.  (ECF No. 142.)

IT IS SO ORDERED.

DATED:  May 14, 2020

Troy L. Nunley
United States District Judge

---

[1] To the extent Defendant alternatively asks the Court to change his custody status to home confinement, 18 U.S.C. § 3621(b) precludes the Court from doing so.  *See* 18 U.S.C. § 3621(b) (precluding judicial review of BOP placement decisions).